UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

**CIVIL ACTION NO. 13-92-DLB**

**MONTANA L. PHIPPS**                                                                  **PLAINTIFF**

**vs.**                        **MEMORANDUM OPINION AND ORDER**

**CAROLYN COLVIN,**
**Acting Commissioner of Social Security**                          **DEFENDANT**

\*\*\*    \*\*\*    \*\*\*    \*\*\*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision as it is supported by substantial evidence.

**I.**      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Montana Phipps filed his application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on July 19, 2010, alleging a disability onset date of January 1, 2009. (Tr. 206-213). Plaintiff's claims were denied initially (Tr. 132, 136), and again on reconsideration (Tr. 148, 151). On May 9, 2012, Administrative Law Judge Maria Hodges held a hearing at Plaintiff's request. (Tr. 31-65). On May 30, 212, the ALJ issued an unfavorable decision denying Plaintiff's claims for benefits. (Tr. 11-25). This decision became the final decision of the Commissioner when the Appeals Council denied review on June 28, 2013. (Tr. 1-3).

1

Plaintiff filed the instant action on July 14, 2013. This action has culminated in cross-motions for summary judgment (Docs. # 10, 11), which are ripe for review.

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

## B. The ALJ's Determination

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2009, the alleged onset date. (Tr. 16). At Step 2, the ALJ found Plaintiff's seizure disorder, headaches, decreased visual acuity on the right, thoracic and lumbar strains, and borderline intellectual functioning to be severe impairments within the meaning of the regulations. (*Id.*). At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Par 404, Subpart P, Appendix 1. (Tr. 18-20).

At Step 4, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform less than a full range of light work, with the following limitations:

> [Plaintiff] should never climb ladders, ropes, or scaffolds. He should avoid concentrated exposure to vibration and all exposure to operational control of moving machinery and unprotected heights. He cannot perform commercial driving. His work is limited to one or two-step tasks with only occasional decision making and only occasional changes in the work setting with no production rates. He has limited visual acuity in the right eye.

(Tr. 20). Based on this RFC, the ALJ found that Plaintiff was not capable of performing past relevant work. (Tr. 23).

Accordingly, the ALJ proceeded to the final step of the sequential analysis. At Step 5, the ALJ found that Plaintiff could perform a significant number of jobs in the national economy. (Tr. 24). The ALJ based this conclusion on the testimony from a vocational expert (VE), in response to a hypothetical question assuming an individual of Plaintiff's age, education, work experience, and RFC. (Tr. 24-25). The VE testified that the hypothetical individual would be able to work as a sorter (2,000 jobs regionally/33,000 nationally) and office cleaner (8,000 jobs regionally/154,000 nationally). Based on the testimony of the

3

VE and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff was not under a "disability," as defined by the Social Security Act. (Tr. 25).

**C.     Analysis**

Plaintiff advances one argument on appeal. He alleges that the ALJ erred by placing "great weight" on the opinion of State Agency Physician Edward Stodola, Ph. D., because he was not provided with the records of one-time examining psychologist, Dr. Leigh Ann Ford and, therefore, unable to accurately assess Plaintiff's intelligence. In finding that Plaintiff had low average intelligence, Dr. Stodola relied on the findings of Dr. Hall, who found that Plaintiff's Full-Scale IQ was 61, but that it was a low estimate of his true IQ given the significant differences between index scores. Plaintiff believes that if Dr. Stodola also had the report of Dr. Ford, who found that his Full-Scale IQ was 63, Dr. Stodola would have likely found that Plaintiff's IQ was accurately calculated by Dr. Hall. Because Dr. Stodola did not have this information, Plaintiff believes Dr. Stodola's opinion was not due "great weight."

Plaintiff's claim of error bears on his more general argument that he meets Listing 12.05©, which requires "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." While the ALJ noted that Plaintiff had Full-Scale IQ scores ranging from 61 to 84 (Tr. 19), the ALJ also concluded that Plaintiff did not have a "valid verbal, performance, or full scale IQ of 60 through 70 . . . " The ALJ does not immediately explain why the IQ score of 61 does not meet Listing 12.05©. However, reviewing the ALJ's entire decision, it is apparent that he agreed with Dr. Stodola that the score was an invalid indication of Plaintiff's intelligence.

4

Plaintiff's claim of error, thus, presents two questions for the Court.  First, did the ALJ err by placing great weigh on Dr. Stodola's opinion despite the fact that Dr. Stodola did not review Plaintiff's entire record?  Second, did the ALJ err by rejecting the IQ test score rendered by Dr. Hall?  The Court finds that the ALJ did not err in either respect.

First, Plaintiff is simply incorrect that the ALJ could not give Dr. Stodola's opinion "great weight" because he did not review Dr. Ford's report.   In some circumstances, an ALJ may only credit the opinion of a state agency physician if he has reviewed the entire record.  For example, if an ALJ chooses to credit the opinion of a state agency physician over a treating physician, he must only do so if the agency physician has reviewed the entire record, and that record provides more detailed information than what was available to the individual's treating source.  *See Fisk v. Astrue*, 253 F. App'x 580, 587 (6th Cir. 2007).  But that rule is inapplicable here because the ALJ did not credit Dr. Stodola's opinion over the opinion of a treating source.  Instead, pursuant to regulations, the ALJ was required to consider whether Dr. Stodola reviewed all the record evidence *in addition to* a number of other factors in determining the weight Dr. Stodola's opinion should be afforded. *See* 20 C.F.R. §§ 404.1527©, 416.927© (other factors including the examining relationship, the treatment relationship, the opinion's supportability by the record).  Because Dr. Stodola's review of the record was only one of multiple factors the ALJ was required to consider, the ALJ did not err as a matter of law by giving Dr. Stodola's opinion great weight despite the fact that he never reviewed Dr. Ford's report.

Additionally, it would have been futile for Dr. Stodola to consult Dr. Ford's report because the ALJ found that Dr. Ford's report was unreliable as it was inconsistent with the record. The Court's review of the record supports the ALJ's finding.  Dr. Ford opined that

Plaintiff had poor ability to deal with the public. However, Plaintiff's school records indicate that his social and emotional performance was commensurate with his peers. (Tr. 316). Plaintiff also admitted that he spends time with family on a daily basis, and visits his family a couple days a week. (Tr. 263). Additionally, a field officer observed Plaintiff as being "polite" and "kind." (Tr. 221).

The record also contradicts Dr. Ford's opinion that Plaintiff could not maintain attention and concentration. Plaintiff testified that he watches television a couple hours a day and is able to concentrate on the shows he watches. Additionally, a consultative examiner found that Plaintiff's attention, concentration and memory were in tact. Furthermore, he worked for a sign company for nearly nine months, working nine hours a day four days a week. He stopped working for the company only because he could no longer find transportation to work. This work history belies Dr. Ford's finding that Plaintiff could not maintain attention and concentration. And, in the end, the record as a whole contradicts Dr. Ford's findings such that her opinion was unreliable and would have been of little use to Dr. Stodola.

Second, the ALJ did not err in rejecting the IQ score assessed by Dr. Hall and, thus, finding that Plaintiff did not have a valid Full-Scale IQ score between 60 and 70. Dr. Hall found that Plaintiff's Full-Scale IQ score was 61. This score was calculated by combining Plaintiff's individual index scores. However, Dr. Hall noted "significant differences" in Plaintiff's individual index scores. Dr. Hall opined that these differences caused Plaintiff's Full-Scale IQ score to be a "low estimate of [his] true intellectual functioning," effectively acknowledging that the scores were unreliable. If Dr. Hall did not believe the scores were valid, the ALJ had no reason to believe they were valid.

Furthermore, the ALJ noted that Plaintiff had a history of making efforts to deceive. Specifically, the ALJ noted that Plaintiff had twice been arrested for receiving stolen property and jailed for sixty days. Plaintiff's history of deception potentially showed that he was being deceptive during his IQ testing, which explained the significant differences in IQ index scores. This explanation, combined with Dr. Hall's own opinion that Plaintiff's Full-Scale IQ score of 61 was a "low estimate," provides substantial evidence for the ALJ's decision to reject Plaintiff's qualifying Full-Scale IQ Score. As such, substantial evidence supports the ALJ's finding that Plaintiff did not meet Listing 12.05©.

### III. CONCLUSION

Accordingly, for the reasons set forth herein,

**IT IS ORDERED** as follows:

(1) The Defendant Commissioner's decision is **AFFIRMED** as it is supported by substantial evidence.

(2) Plaintiff's Motion for Summary Judgment (Doc. # 10) is hereby **DENIED**;

(3) Defendant's Motion for Summary Judgment (Doc. # 11) is hereby **GRANTED**; and

(4) A Judgment shall be entered contemporaneously herewith.

This 29th day of April, 2014.



Signed By:
*David L. Bunning* DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\Ashland\13-92 Phipps MOO.wpd

7